UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSHUA HOWARD,

  **Plaintiff,**

 v.              Case No. 17-CV-1353

TONY MELI,
JEREMY WESTRA,
AND CYNTHIA RADTKE,

  **Defendants.**

---

### ORDER

---

  On October 9, 2019, U.S. District Judge Pamela Pepper referred this case to me to handle pretrial proceedings. (Docket # 62.) Joshua Howard, a Wisconsin state prisoner, filed this *pro se* civil rights case under 42 U.S.C. § 1983. He alleges that the defendants transferred him from Waupun Correctional Institution (WCI) to Green Bay Correctional Institution (GBCI) in 2017 in retaliation for helping inmate Kristopher Torgerson with a civil case. (Docket # 15 and Docket # 16.) On March 22, 2019, the defendants filed a motion for summary judgment. (Docket # 25.) Howard has not responded to the motion because of discovery-related issues. Howard has filed a motion to compel and a supplemental motion to compel. (Docket # 47 and Docket # 49.) The defendants have filed a motion for protective order as to Exhibits A and B, and a motion to strike Exhibit C. (Docket # 57.) I will address each in turn.

1. *Howard's Motion to Compel (Docket # 47) and Defendants' Motion for Protective Order (Docket # 57)*

Howard filed a motion to compel requesting the court order the defendants to produce the following materials: (1) any emails related to inmate Torgerson's criminal case which mentioned Torgerson and Howard; (2) any materials related to the 2016 inter-institutional transfer of Howard including, but not limited to, the email attachment from DOC-051, any documents generated from Torgerson's ICRS complaint about the transfer, the cell hall logs from the transfer date if they reference Howard, and any emails where the defendants reference the transfer; and (3) any materials related to the transfer of inmates Ralph Armstrong, Tobarus Porter, and Yusef Williams from GBCI. (Docket # 47 at 13.)

1.1 Emails Mentioning Howard and Inmate Torgerson

Howard submitted a discovery request to the defendants to "produce all documents and e-mails which mention or discuss both inmate Kristopher Torgerson and the plaintiff." (Docket # 47 at 5.) The defendants objected to the request as overly broad, unduly burdensome, and not proportional to the needs of the case.[1] (*Id.*) The defendants also objected to the request on the grounds that "the only correspondence involving Plaintiff and inmate Kristopher Torgerson which Defendants were privy to which was located in our search pertains to inmate Torgerson's criminal case and is irrelevant to the claims Plaintiff was allowed to proceed on in this case." (*Id.*)

---

[1]The defendants state that, near the start of this case, the Department of Corrections conducted a search for emails in the three defendants' email accounts using the search terms "Howard" or Howard's DOC number. (Docket # 50 at 2 n.1.) The defendants also state that the search resulted in 2,611 potentially responsive emails which took a substantial amount of time to review. (*Id.*) They state that objections relating to the search being burdensome are due to the sheer number of emails defendants needed to weed through to find potentially relevant emails. (*Id.*)

In his motion to compel, Howard contends that emails about inmate Torgerson's criminal case may be relevant because the prosecutor in Torgerson's criminal case (Assistant Attorney General Richard Dufour) stated in his declaration that he found out "Howard was helping Torgerson and/or a friend in some civil matters as a jailhouse lawyer." (*Id.* at 6.) Howard concludes that AAG Dufour and the defendants may have discussed Howard's assistance in Torgerson's lawsuit against the defendants before he was transferred. (*Id.*)

The defendants contend the court should deny Howard's motion to compel because in the course of responding to his voluminous discovery requests, they have provided Howard with all the documents to which he is entitled. (Docket # 50 at 1.) They state that in responding to Howard's motion to compel, they found one additional responsive email which was missed in the prior review of the 2,611 emails. (Docket # 50 at 2.) The defendants state that this email references Torgerson and Howard and their "case" but does not describe the case as criminal or civil, but, nevertheless, its content is not relevant to Howard's lawsuit. (*Id.* n.2.) The defendants filed this email under seal. (Docket # 51-1, Exhibit A.) The defendants also state that there are a handful of emails which pertain to Howard's involvement in inmate Torgerson's criminal case which are responsive to Howard's discovery requests, but irrelevant to his lawsuit. (Docket # 50 at 3.) They also filed these emails under seal. (Docket # 51-2, Exhibit B.)

1.2     Emails Related to Howard's Cell Hall Transfer

Howard seeks emails, cell hall logs, and any documents generated from inmate Torgerson's ICRS complaint related to Howard's October 2016 cell hall transfer at WCI. (Docket # 47 at 6–9.) Howard states that the week before inmate Torgerson's civil case (the case that Howard helped him with) was "formally filed," the defendants moved Howard to

the North Cell Hall, where his only contact with Torgerson was through the mail, which the defendants monitor. (Docket # 47 at 6–7.) The defendants objected because this transfer within WCI is irrelevant and outside the scope of the claims in this case. (Docket # 50 at 3.) In discovery requests, Howard replied to the objection and argued that the cell hall transfer occurred shortly after Howard e-filed Torgerson's civil case and, based on the timing, Howard believed that the filing of the lawsuit is what caused the defendants to move Howard away from inmate Torgerson. (Docket # 47 at 7.) In reply to Howard's request for cell hall logs, the defendants explained that inmate Torgerson's lawsuit was not screened until December 1, 2016, almost four months *after* the cell hall transfer. (Docket # 47 at 8.)

Howard contend that the documents he requested are relevant and likely to lead to the discovery of admissible evidence of prior attempts to derail his assistance in an action against the defendants and/or evidence that they were aware of the assistance prior to ordering his transfer to GBCI. (Docket # 47 at 10.) The defendants contend that they would not have been made aware of the lawsuit until after the case was screened in December 2016, almost four months after the cell hall transfer. (Docket # 50 at 3.) They state that given this chronology, the transfer within WCI could not have been motivated by Howard's filing of inmate Torgerson's lawsuit. (*Id.* at 4.) The defendants contend that the documents relating to the cell hall transfer are not relevant and that, to assist the court in ruling on the motion, they have provided under seal the emails that Howard seeks (Docket # 51-3, Exhibit C) which show the transfer has no relevance to this lawsuit (Docket # 50 at 4).

### 1.3 Documents Pertaining to Other Inmates

Howard states that in response to discovery requests, defendant Meli stated that he wanted Howard transferred out of WCI because during his fifteen-year stay there, he had

4

become very familiar with staff, other inmates and the daily operation of the institution. (Docket # 47 at 10.) Howard then requested specific information related to three inmates who were allegedly transferred for similar reasons, such as their Program Reclassification Committee paperwork and staff emails discussing the other inmates' transfers. (*Id.* at 10–11.) The defendants objected to the requests as overly broad, unduly burdensome, confidential, disproportional to the needs of the case, and irrelevant. (*Id.* at 11.)

In his motion to compel, Howard contends that the defendants' stated reason for transferring him to GBCI is pretext and he claims that the only way he can prove that the defendants' reason for transferring him was pretextual is by showing that the three inmates identified by defendants were not transferred for the reasons offered just as he was not transferred for that reason. (*Id.*) The defendants contend that the details surrounding these other inmates is not relevant to why Howard was transferred and that they properly objected to the requests. (Docket # 50 at 4.)

### 1.4 Howard's Reply

In his reply, Howard contends that the court should order the defendants to disclose the 2,611 Howard-related emails (referenced above at pages 2–3, n.1). According to Howard, based on the number of emails and the length of time the defendants have worked at WCI, the defendants sent an average of 435 Howard-related emails per year during the five-year period before his transfer to GBCI. (Docket # 56 at 2–3.) He states:

> Even if these emails fail to directly implicate the defendants they show that their observations of the plaintiff was extensive and the plaintiff can use the more detailed emails and the sheer volume to demonstrate that given their seeming fixation on the plaintiff, it would be unlikely that they remained unaware that the plaintiff spent most of 2016 huddled up with Torgerson, preparing the lawsuit and all of 2017 corresponding with Torgerson and sending him paperwork for the lawsuit.

(*Id.* at 3.) Howard also contends that the court should order the defendants to disclose the three exhibits submitted to the court (Docket # 51-1, 51-2, 51-3 – Exhibits A, B, and C), the ICRS complaint and cell hall logs relating to the October 2016 move, and the documents related to the transfers of the three other inmates (Docket # 56 at 7). Regarding the transfer of the three inmates, Howard states that it is his position that nobody has ever been moved by security for being at WCI too long. (Docket # 56 at 6.) He faults the defendants for refusing to submit the emails and documents which would confirm or refute their assertion. Howard states that if the requested documents fail to support their proffered reason, that means that they fabricated examples of similar moves to cover up their improper motives. (*Id.*) Howard states that the documents are either relevant in establishing that the transfer was somewhat routine or that the three inmates were identified in a sloppy attempt to justify the improper transfer of Howard. (*Id.*)

      1.5      Defendants' Motion for Protective Order

On September 30, 2019, the defendants filed a motion for protective order as to Exhibits A and B (Docket # 51-1, 51-2), and a motion to strike Exhibit C (Docket # 51-3). (Docket # 57.) They contend that Exhibit A (Docket # 51-1) should remain under seal because if it were unsealed, it could threaten the safety of the inmate discussed in the email (Docket # 57 at 1.) And the defendants contend that Exhibit B (Docket # 51-2) should remain under seal from the public because it implicates the same reasons Howard identified in his own motion to seal summary judgment materials, which sought to place Exhibit 1015 under seal. (*Id.* at 2.) The defendants assert that although Exhibit B should remain sealed from the public, the defendants will send Howard Exhibit B with minor redactions that are comparable

6

to the redactions found in Ex. 1015. (*Id.*) Regarding Exhibit C, the defendants reassert their objection made in discovery to providing the email on the basis that it is irrelevant to this case. (*Id.* at 2–3.) The defendants contend that Howard should not be provided access to an irrelevant document simply because he filed a motion to compel and they provided the document in defense of their motion. (*Id.* at 3.) The defendants state that, in retrospect, they should not have filed Exhibit C at all, and they stand on their objection and request the court to strike the email from the record. (*Id.*)

In response to the defendants' motion for protective order, Howard states that they have now provided cause to seal Exhibit A and he does not object to it being sealed. (Docket # 61.) He also states that he does not object to the disclosure of Exhibit B to him in redacted form. Lastly, Howard states that he does not object to Exhibit C being withdrawn, but he renews his position that "these emails" should be disclosed due to relevance. (*Id.*)

### 1.6 Discussion

Fed. R. Civ. P. 26(b)(1) which governs the scope of discovery states as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Applying this rule here, I will deny Howard's motion to compel the production of the emails mentioning Howard and Inmate Torgerson and grant the defendants' motion for a protective order as to Exhibits A and B. The defendants provided the emails responsive to

Howard's discovery requests under seal to the court. (*See* Docket # 51-1, 51-2, Exhibits A and B.) Howard does not object to Exhibits A and B remaining under seal, and the defendants have shown good cause for keeping them under seal.

Second, regarding discovery related to Howard's cell hall transfer which the defendants provided as Exhibit C, I will deny Howard's motion to compel because the defendants' Exhibit C shows that Howard was transferred for reasons unrelated to inmate Torgerson. The defendants provided emails (Docket # 51-3, Exhibit C) under seal "[t]o assist the court in ruling on the motion" because the emails show the transfer has no relevance to this lawsuit. (Docket # 50 at 4.) Moreover, Howard has no objection to striking Exhibit C and I will therefore grant the defendants' motion to strike Exhibit C.

Third, regarding the documents pertaining to other inmates, I will deny Howard's motion to compel because the requested documents are not relevant. Even if the three inmates were not transferred for the stated reasons, i.e., because they had been at WCI for a long time, that does not make it more or less likely that the defendants' stated reasons for transferring Howard was pretextual and therefore the real reason was unlawful retaliation.

Fourth, as stated above, in Howard's reply brief he requests that the court order the defendants to provide discovery that was not the subject of his motion to compel. Specifically, he requests that they provide the 2,261 Howard-related emails that were generated from the defendants' search. This request is not properly before the court as a motion to compel and, therefore, I will deny the request.

2. *Howard's Supplemental Motion to Compel*

Howard has filed a supplemental motion to compel. (Docket # 49.) His motion addresses his requests for emails relating to an attempted 2015 transfer of him to Wisconsin

Secure Program Facility (WSPF) involving the defendants and third parties. (*Id.* at 1.) Howard states that when he asked for the emails, the defendants asserted attorney-client privilege and identified a single email sent by defendant Meli to other DOC staff. (*Id.*) He also states that in response to their subpoenas, Heise and Greff made vague assertions of attorney-client and work product privilege and identified another eleven emails in their privilege log. (*Id.*) Howard contends that these objections fail and he requests that the court order the defendants and the non-parties, Heise and Greff, to produce: (1) any emails that June Hunt was a party to which discussed Howard's proposed 2015 transfer to WSPF; (2) the May 22, 2015 email sent by defendant Meli, identified in the privilege log; and (3) the eleven emails involving defendant Meli, Mr. Heise, and Mr. Greff identified in the non-party privilege long. (Docket # 49 at 18.)

    2.1  May 22, 2015 Email

 Howard seeks a May 22, 2015 email relating to his near-transfer to WSPF in 2015. (Docket # 49 at 8–10.) The email, described in the defendants' privilege log as "forwarding email from DOJ seeking information to respond to recent filing by Howard," was listed in the defendants' privilege log. (Docket # 47-1 at 92.) The defendants objected to providing emails related to Howard's near-transfer to WSPF in 2015 on the grounds that they are not relevant to his 2017 transfer to GBCI at issue in this case. (Docket # 54 at 2; Docket # 47-1 at 26.) In this case, Howard alleges that the defendants retaliated against him for helping inmate Torgerson with a lawsuit that Torgerson filed in 2016. The defendants contend that emails from 2015 could not make it more or less probable that the defendants transferred Howard in 2017 to retaliate against him for helping Torgerson with his lawsuit. (Docket # 54 at 2.)

9

The defendants also objected to producing the email on the grounds that it is privileged attorney-client communication. (Docket # 54 at 2.) Howard contends that the claim of privilege was waived because the defendants did not describe the nature of the document being withheld, in violation of Fed. R. Civ. P. 26(b)(5). (Docket # 49 at 9.) But the defendants contend that the privilege log adequately describes the privilege, and nothing more was needed. (Docket # 54 at 3.) Howard also contends that the privilege was waived when it was sent to four other people. (Docket # 49 at 9.) The defendants point out that the email was only shared with people who were acting as agents of the Wisconsin Department of Justice and Wisconsin Department of Corrections to carry out an investigation at the request of a DOJ attorney. (Docket # 54 at 3.)

### 2.2 Privileged Emails Responsive to Heise/Greff Subpoenas

Howard seeks emails that are responsive to subpoenas he issued to Mark Heise and Brian Greff, two non-party DOC employees. Greff asserted attorney/client privilege to Emails 2, 3, and 4 from Howard's supplemental motion to compel. (Docket # 49 at 10–13.) The three emails are dated May 26, 2015, and each email is identified in the privilege log as "email in response to inquiry from DOJ regarding recent filing by Howard." (Docket # 49-1 at 1.) The defendants state that the email recipients were contacted in their roles as agents of the DOJ or DOC, in order to investigate a question posed by a DOJ attorney related to litigation. (Docket # 54 at 4.)

Howard takes issue with the fact that defendant Meli did not assert a privilege regarding Emails 2 and 3. (Docket # at 10, 11.) However, according to the defendants, Meli could have asserted a privilege but the emails about the attempted 2015 transfer properly fit under defendants' relevance objection. (Docket # 54 at 4.)

Next, Howard argues that because defendant Meli disclosed one email about the 2015 transfer, Greff cannot assert privilege for other similar types of emails. (Docket # 49 at 12; Docket # 47-1 at 94, Exhibit CC.) In the email previously disclosed, Brian Greff had written, "Is Joshua Howard #271543 getting transferred that we know of? The DOJ states he is being transferred and wants to know why." (Docket # 54 at 4.) A non-party responded, cc'ing Greff and Meli, "He was referred and approved to go to WSPF. He has a 'Habeas hold' – he can't be transferred due to pending court action. DOJ has to be notified if a transfer is being considered in these cases so they can check with the court to see if the inmate can be moved." (*Id.* at 4–5.) The defendants contend that while perhaps this email should not have been previously disclosed, Meli could have objected to producing it because the email is irrelevant and attorney-client privileged, and that, nevertheless, this disclosure by Meli does not mean *other* irrelevant and privileged emails must be disclosed by Greff. (Docket # 54 at 5.)

Regarding the eight emails at issue that were responsive to Howard's subpoena to Heise (emails 5 – 12 in Howard's supplemental motion to compel, Docket # 49 at 13-17), Heise objected to these emails as attorney-client privileged as they related to an investigation which was sought by a DOJ attorney and pertained to pending litigation (Docket # 54 at 5). According to the defendants, these emails were appropriately described in the privilege log as "email[s] in response to inquiry from DOJ regarding recent filing by Howard." (*Id.*; Docket # 49-1 at 1.) The defendants assert that while the emails involved numerous individuals, and not always an attorney, "they were all in furtherance of the attorney's requested investigation and included only those people necessary to respond to the request." (Docket # 54 at 5.)

11

### 2.3 June Hunt Emails

Howard seeks emails related to a subpoena he mailed to June Hunt, a former DOC employee. It appears that the subpoena was returned to Howard with a notation that Hunt had retired. (Docket # 47-1 at 96.) The defendants contend that the court should deny Howard's motion because he failed to provide proper notice of this subpoena. (Docket # 54 at 6.)

### 2.4 Discussion

I begin with the defendants' contention that the requested emails are privileged. The party seeking to invoke the privilege bears the burden to prove: (1) that it sought legal advice, (2) from a professional legal adviser in his capacity as such, (3) that the communications related to that purpose, (4) that the communications were made in confidence, and (5) that the communications were made in confidence by the client. These communications are, at the client's instance, permanently protected from disclosure by himself or by the legal adviser, unless the protection is waived. *See, e.g.*, *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev. 1961)); *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009) ("The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice.").

The defendants have not provided enough information for the court to conclude that the emails are privileged. The privilege logs (Docket # 47-1 at 92; Docket # 49-1 at 1), which the defendants contend support the existence of a privilege, contain minimal information. The

court cannot address the enumerated factors listed above to determine whether the attorney client privilege exists.

Next, I turn to relevancy. The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002) (citing *Jackson v. Brinker*, 147 F.R.D. 189, 193-94 (S.D. Ind. 1993)). The defendants contend that the May 22, 2015 email is not relevant. They mainly assert privilege as to the other emails, although they state that Meli raised the relevance objection to Emails 2–4.[2] Howard claims that emails related to his 2015 aborted transfer to WSPF are relevant. In his reply, Howard explains his relevancy argument:

> The Defendants continue to argue against the relevancy of the aborted 2015 WSPF transfer to this action. The defendants admit that on 4.08.15, Chilsen informed them that the plaintiff's habeas hold did not prevent his transfer to WSPF. (P-Ex. P, Adm. 11 at 3-4) The defendants admit that in May of 2015 the DOJ made inquiries about the motivation for transfer and that in June of 2015 the Warden informed Meli that the DOJ wanted the transfer rescinded. (P-Ex. P, Adm. 9, 13 at 3-4) On 3.06.17, Meli stated in an email that he could not "move inmate Howard per litigation and the DOJ." (D-Ex. 1015 at 1) When the warden asked Meli who he had in mind for transfer to GBCI on 8.21.17, he responded, "[o]bviously Joshua Howard but I doubt the DOJ will let me move him." (P-Ex. X at 1) Despite this, the defendants state that they have "no recollection and/or knowledge" of the DOJ requesting that the transfer be rescinded, (P-Ex. D, Req. 2 at 2), and deny that the DOJ directed them to schedule a PRC hearing so that his placement could be changed from WSPF back to WCI or that the DOJ directed that the transfer be recalled due to its belief that it was improperly motivated. (P.-Ex. P, Adms. 14-16 at 4-5) Furthermore, Meli did not notify or contact the DOJ despite acknowledging that they would likely not allow the plaintiff to be transferred and only verified with the OLC that he did not have a habeas hold prior to his transfer. (D.-Ex. 1041)
>
> The defendants confirm that the 2017 GBCI transfer was issued for the same reasons as the attempted 2015 transfer, "as they had not abated." The

---

[2] The defendants previously objected to Howard's request for the issuance of the subpoenas on the non-parties on the grounds that discovery from non-party witnesses to determine why the DOC chose not to transfer Howard to WSPF in 2015 would not tend to make it more likely that the defendants transferred Howard in 2017 in retaliation for Howard helping inmate Torgerson with his lawsuit. (Docket # 22 at 1–2.)

13

defendants have tied the legitimacy of the 2017 transfer to that of the 2015 attempted transfer so it is relevant if the DOJ found that it reeked of retaliation and took the unusual step of vetoing a security transfer made by the Security Director of a DOC facility. It is also relevant to see what the defendants were told at the time as they continue to have no memory of the DOJ's intervention and repeatedly contend that the transfer was quashed due to the habeas hold.

(Docket # 60 at 3-5.)

Howard claims that in 2017, defendants Meli, Westra, and Radtke transferred him to GBCI in relation for Howard helping inmate Torgerson with a lawsuit that was filed in 2016. Howard's explanation does not show how the 2015 activities could be relevant to his current claim or how it could lead to relevant information related to his claim in this case. This includes the June Hunt emails,[3] if any. Thus, Howard's supplemental motion to compel will be denied.

**THEREFORE, IT IS ORDERED** that the plaintiff's motion to compel discovery (Docket # 47) is D**ENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's supplemental motion to compel (Docket # 49) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for protective order as to Exhibits A and B (Docket # 57) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to strike as to Exhibit C (Docket # 57) is **GRANTED**.

---

[3] The defendants contend that undersigned counsel did not receive notice of this subpoena and only learned about it through Howard's supplemental motion to compel. (Docket # 54 at 6.) They state that, as such, there was no opportunity to make a timely objection or motion to quash. And the request for documents should be denied and the subpoena should be quashed for failure to provide notice. However, the record shows that Howard did provide notice to the defendants, albeit not technically the notice required under Fed. R. Civ. P. 45(a)(4) because it appears that Howard did not serve the defendants "before" he served the non-parties. (Docket # 44, 44-1.)

**IT IS FURTHER ORDERED** that a party may serve and file objections to this order within fourteen days of being served with the order. *See* Fed. R. Civ. P. 72(a). The district judge will consider a timely objection and will modify or set aside this order or any part of this order only if it is clearly erroneous or contrary to law.

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2019.

**BY THE COURT:**

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge